## Case No. 14,482.

### UNITED STATES v. AYLWARD.

#### [24 How. Prac. 142.]

#### District Court, D Connecticut. 1853.

COUNTERFEITING — RESEMBLANCE TO GENUINE — ORDINARY CAUTION.

1. In order to make counterfeiting an offence, within the act of congress (Act 1825, c. 65, § 20 [4 Stat. 121]), it is not necessary for the prosecution to show that the prisoner made the base in exact resemblance of the true coin.

2. The words "similitude" and "resemblance," as used in that statute, must be construed to mean, not an exact copy, but such a one as might deceive an ordinary observer.

3. If the spurious article had not a resemblance strong enough to deceive persons exercising ordinary caution, then the passing was not a public crime.

The prisoner in this case was indicted for passing a counterfeit coin, in the similitude and resemblance of an English sovereign, made current by the laws of the United States. He had pleaded guilty of passing the coin, but his counsel had taken exception, and called on the district attorney to bring into court the alleged base coin for inspection. This had been done. The coin on the one side bore a close resemblance to a sovereign, impressed with the likeness or head of the queen of England, and the date 1849, etc.; but on the reverse side was a prince, mounted on a charger, with the words "To Hanover," and the figures "1837," in imitation, somewhat, of the sovereign of 1824 and of a double one of 1823.

It was contended for the defence (D. McMahon, of counsel) that there was not such a similitude and resemblance between the genuine sovereign and this counterfeit as to render the passing of it a crime, within the act of congress; and the counsel referred to U. S. v. Morrow [Case No. 15,819], and Rex v. Varley, 1 Leach, 76.

J. Prescott Hall, contra.

THE COURT (JUDSON, District Judge) now gave judgment. In support of the motion it might be stated as a principle, that if the spurious article had not a resemblance strong enough to deceive persons exercising ordinary caution, then the passing was not a public crime. The cases relied upon showed clearly that one ingredient in the crime was the tendency of the false coin to deceive and defraud the person to whom it was uttered; and in both those cases it was apparent that the coins could not deceive any one. So, also, it had been held with regard to promissory notes. The important question arising here was the true import of the terms "similitude" and "resemblance," as used in the act. In point of fact, these false coins had a decided resemblance to the genuine sovereign, in many particulars; but in others they wanted a strong similitude. He then stated the points of resemblance and dissimilarity. The latter was principally the difference between the George and the dragon on the genuine sovereign of 1823 and 1824, and the prince galloping over the dragon, with the words "To Hanover," and the date "1837," as appeared on the counterfeit coins in question; but these dissimilarities would only be known by those thoroughly conversant with those distinctions, and a very large portion of the community, who know nothing of these marks of resemblance, might easily be deceived; as in fact the persons were, to whom they were passed. It has been stated by counsel for the defence, that the similitude and resemblance should be strong and exact; but such could not have been the sense in which the words were used in the act. This construction would let loose every counterfeiter of coins, for an exact resemblance would extend to the metal itself. A reference to the best authors, (some of whom he quoted) warranted him in saying that the terms, as used in the act of congress, did not mean an exact copy, but such a one as might deceive an ordinary observer; and such were those base coins.

The plea of guilty would require judgment to be entered against the prisoner, and he was sentenced to imprisonment, with hard labor, for the term of two years and eight months.